MILLER v. CHANCE and others.

Where a statute authorized the board of trustees or a majority of them to mort-
gage; and a mortgage was made by nine persons described as trustees:
*The court held*, that it would intend it as executed by authority of the board
until the contrary was shown.

There were nine trustees, with two *ex officio;* and the statute under which
they acted authorized the board of trustees or a majority of them to mort-
gage. Five, not including the officers *ex officio*, executed a mortgage: *Held*,
that the statute intended a majority exclusive of the trustees *ex officio* and
that the authority of the board would (as above) be presumed.

Where a statute authorized trustees to mortgage for the purpose of securing
purchase money and erecting a certain masonic building and such trustees
mortgaged to persons to secure their claims for work and materials upon
such building; *Held*, that the mortgages were valid. That the general ob-
ject of the statute was to be looked to and not its strict letter, unless such
statute had been evaded in its spirit.

BILL to foreclose two mortgages. Demurrer interposed.   *Jan. 29,*
By the act, entitled "An act to enable Masonic lodges to   **1840.**
take and hold real estate for certain purposes," passed April   *Trustees.*
16th, 1825, it was enacted, (section 6,) that any three or more   *Statute.*
lodges or chapters of free masons in the city of New York or the   *Mortgage.*
members thereof, might associate together and purchase and
hold so much land in the said city as should be necessary for the
purpose of erecting a general hall for the accommodation of the
social lodges and chapters in the said city. And that it might
be lawful for the lodges and chapters, when associated, to ap-
point three trustees from each lodge or chapter to take and
hold real estate to and for the uses aforesaid. Also it was en-
acted that, in addition to the trustees contemplated by the act,
the mayor and recorder of the city of New-York for the time
being should be *ex officio* trustees of the said association; and
that it should and might be lawful for the said board of trus-
tees or a majority of them, in their discretion, to mortgage to
any person or persons, body corporate or politic, such premises,
with the building and buildings thereon, if, in their opinion, it
should be necessary, for the purpose of securing the purchase

1840.

MILLER
v.
CHANCE.

money to be paid for the said premises or for the purpose of creating such building or buildings thereon.

The bill in this cause was filed to foreclose two mortgages. It set forth that, under the provisions of the above act, three trustees from each of certain three New York Masonic lodges had been chosen to hold real estate ; and that one Henry Hone had duly assigned to these trustees, namely, John W. Brown, Matthew Reed, John Hone, jr., Charles Belden, Thomas Cleary, William D. Wilson, John H. Watson, William E. Ross and George Chance, "Trustees of the Masonic Hall Association of the city of New-York," a certain lease for ninety-nine years of two lots of land.    That on or about the eighth day of July, one thousand eight hundred and twenty-eight, the said trustees or Masonic Hall Association were jointly indebted to Richard Kidney and Arthur Smith, builders, in the sum of three thousand one hundred and fifty dollars for work and materials in the erection of a general hall upon the said two lots of land and other adjoining premises for the accommodation of lodges and chapters of freemasons ; and that for securing the same, the said trustees (naming all of them) had executed a bond and mortgage to the said Kidney and Smith.    Also setting forth that the said bond and mortgage had been assigned to and were held by the complainant.    Also that the said trustees or Masonic Hall Association were indebted to Edward Higgins, painter, in the sum of one thousand dollars for work and materials in the erection of a general hall·upon the same lots and adjoining premises ; and, as security, the said Charles Belden, Thomas Cleary, William D. Wilson, John H. Watson and William E Ross, being a majority of the said trustees, executed a bond and mortgage to the said Edward Higgins upon the same premises.    And, by assignment, the said bond and mortgage became vested in the complainant.    The remainder of the bill was formal.

General demurrer.

Mr. E. Sandford, in support of the demurrer.

Mr. Bonney, contra.

1840.

MILLER
*v.*
CHANCE.

*June* 9.

THE VICE-CHANCELLOR:—As regards the mortgage to Kidney and Smith and by them assigned to the complainant, enough appears on the face of the bill to call for an answer. The consideration is sufficiently described to bring it within the statute as being a consideration for which the trustees were authorized to give a mortgage, namely, a debt contracted for the purpose of creating or erecting a building or masonic house, or in the creation or erection of such a building. The general object and intention of the statute is to be looked at and not the strict letter of it in a case like the present; and the court will give effect to the instrument, unless it appears that the statute has been infringed or evaded in its spirit as well as in its letter.

So, in regard to the execution of the mortgage by nine of the trustees out of the eleven, such eleven including the mayor and recorder *ex officio*. This is enough. It was a majority; and, so far, within the words of the statute; and the court will intend it was executed by authority of the " board of trustees" until the contrary is shown: *Cozine* v. *Graham*, 2 Paige's C. R. 177.

As respects the mortgage to Higgins : I am of opinion the consideration for which it was given is clearly enough stated to be one for which the trustees might lawfully execute a mortgage within the act; and although this mortgage is executed by five trustees—not being a majority of the whole when we include the mayor and recorder—yet I am inclined to say the statute means a majority of the trustees exclusive of the two dignitaries ; at all events that the court must here again intend it was executed by these five under and by virtue of the authority of the board until the contrary is shown—and that the defendants must set up this want of authority by plea or answer, if they would avail themselves of it.

The demurrer must be overruled, with costs ; and the defendants will have to answer the bill in twenty days.